UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS ARNETT, | ) | |
| | ) | CIVIL COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 3:18-CV-00220 |
| NATIONAL INQUISITION | ) | |
| SERVICES LLC and RODNEY A. | ) | |
| GIOVE | ) | |
| | ) | **JURY DEMAND** |
| Defendants. | | |

## COMPLAINT

Now comes NICHOLAS ARNETT ("Plaintiff"), complaining as to the conduct of NATIONAL INQUISITION SERVICES LLC ("Inquisition"), and RODNEY A. GIOVE ("Giove") (collectively, "Defendants").

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*, the Ohio Consumer Sales Practices Act ("CSPA") under Ohio Rev. Code Ann. § 1345 *et seq.*, and Ohio common law.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

[ 1 ]

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendants conduct business in the Southern District of Ohio and substantial portion of the events giving rise to the claims occurred within the Southern District of Ohio.

## PARTIES

4. Plaintiff is a natural person residing within the Southern District of Ohio.

5. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

6. On information and belief, Inquisition is a third-party debt collector.

7. Inquisition is a New York limited liability company registered in Lockport, NY.

8. Giove is an attorney with a long history of third-party debt collection. On information and belief, Giove is a member of Inquisition and oversees Inquisition's third-party debt collection activities.

9. Giove is a New York resident with his principal place of business in Niagara Falls, New York.

10. Defendants are "person[s]" as defined by 47 U.S.C. § 153(39).

11. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

12. For at least the past two months, Inquisition has been calling Plaintiff and Plaintiff's family members frequently with regard to an alleged debt incurred in the form of an online payday loan taken out with Cashnet USA in 2014.

13. Plaintiff has never taken out an online loan.

14. Inquisition repeatedly called Plaintiff's sister and left her a threatening voicemail stating that Inquisition was sending an "independent courier" with court documents in an upcoming action against him.

15. Inquisition also repeatedly called Plaintiff's mother and his wife's grandparents and left them threatening voicemail messages.

16. When Plaintiff contacted Inquisition, Inquisition threatened Plaintiff with arrest and jail if he did not pay the alleged debt.

17. Inquisition also threatened Plaintiff with the filing of a lawsuit on the alleged debt.

18. In an attempt to stop Inquisition's harassment, Plaintiff agreed to authorize a payment to Inquisition in the amount of $50 on his credit card. Inquisition instead charged Plaintiff's credit card in the amount of $350.

19. In order to recover the unauthorized payment and protect himself from additional unauthorized charges, Plaintiff was forced to reverse the transaction and cancel his credit card.

20. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to invasion of privacy, aggravation that accompanies

collection telephone calls, emotional distress, and increased usage of his telephone services.

### COUNT I — VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

21. Plaintiff realleges the paragraphs above as though fully set forth herein.

22. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

23. Defendants are "debt collector[s]" as defined by § 1692a(6) of the FDCPA because the principal purposes of their businesses are the collection of debts, and because they use the instrumentalities of interstate commerce to do so. In the alternative, Defendants are "debt collector[s]" under § 1692(a)(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

24. Employees and officers of debt collection agencies, especially supervisory attorneys, are themselves liable as debt collectors where they "regularly engage[], directly or indirectly, in the collection of debts," including through "oversee[ing] compliance." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

25. Giove is therefore liable for Inquisition's violations of the FDCPA committed under his supervision, including, on information and belief, the violations described in this Count.

26. The subject debt is a "debt" as defined by FDCPA § 1692a(5) because the debt owed or due or asserted to be owed or due to another arises out of a transaction for

personal, family, or household purposes, being in this case a purported payday loan used for personal purposes.

### a. Violations of FDCPA § 1692b(2) & § 1692c(b).

27. The FDCPA, pursuant to 15 U.S.C. § 1692b(2), prohibits a debt collector, when calling any third party for the purpose of locating a consumer, from "stat[ing] that the consumer owes any debt."  The FDCPA, pursuant to 15 U.S.C. § 1692c(b), prohibits a debt collector from communicating about a consumer's debt with any party, other than those the section enumerates (none of which are relevant here), for any purpose other than locating the consumer.

28. Defendants violated § 1692b(2) & § 1692c(b) when Inquisition communicated with Plaintiff's sister, Plaintiff's mother, and Plaintiff's wife's grandparents regarding the alleged debt.

29. The natural consequence of Inquisition's actions was to harass and oppress Plaintiff and introduce stress into Plaintiff's familial relations, resulting in emotional distress.

### b. Violations of FDCPA § 1692e(2)

30. The FDCPA, pursuant to 15 U.S.C. § 1692(e)(2)(A), prohibits "The false representation of the character, amount, or legal status of any debt."

31. Defendants misrepresented the character and legal status of the debt when Inquisition asserted that Plaintiff owed a debt on a loan that he never took out.

32. Defendants misrepresented the amount of the debt when Inquisition asserted that Plaintiff owed a debt on a loan that he never took out.

33. The natural consequence of Inquisition's conduct was to harass and oppress Plaintiff and cause Plaintiff confusion, worry, and emotional distress.

### c. Violations of FDCPA § 1692e(4).

34. The FDCPA, pursuant to 15 U.S.C. § 1692e(4) prohibits "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person . . ."

35. Defendants violated § 1692e(4) when Inquisition's employee(s) threatened Plaintiff with arrest if he did not make payments on the alleged debt.

36. The natural consequence of Inquisition's action was to harass and oppress Plaintiff and cause Plaintiff confusion, worry, and emotional distress.

### d. Violations of FDCPA § 1692e(5).

37. The FDCPA, pursuant to 15 U.S.C. § 1692e(5), prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

38. A debt collector's threat to bring a lawsuit that it does not intend to bring violates § 1692e(5). *See Baker v. G.C. Services Corp.*, 677 F.2d 775, 778–79 (9th Cir. 1982).

39. No court case has been filed against Plaintiff regarding the alleged debt.

40. A Courtlink search by Plaintiff's counsel revealed no instances of Inquisition bringing claims against purported debtors. On information and belief, Inquisition rarely if ever sues debtors against whom it seeks to collect.

41. A further Courtlink search by Plaintiff's counsel revealed no instances of Giove bringing claims against purported debtors. On information and belief, Giove rarely if ever sues debtors against whom he seeks to collect.

42. Defendants violated § 1692e(5) when Inquisition's employee(s) threatened, in telephone conversations and voicemail messages with Plaintiff and his family, litigation it did not intend to bring.

43. The natural consequence of Inquisition's action was to harass and oppress Plaintiff and cause Plaintiff confusion, worry, and emotional distress.

   e. **Violations of FDCPA § 1692f.**

44. The FDCPA, pursuant to 15 U.S.C. § 1692f(1), prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

45. Defendants violated this provision when Inquisition attempted to collect on a debt that was never incurred.

46. Plaintiff's agreement with Inquisition, made in telephone conversation, to make a credit card payment of $50 formed an oral contract.

47. Defendants violated this provision when Inquisition levied a $350 charge on Plaintiff's credit card, an amount not authorized by the new contract. Defendants also violated this provision because levying such an unauthorized charge was unconscionable.

48. The natural consequence of Inquisition's action was to harass and oppress Plaintiff and cause Plaintiff confusion, worry, and emotional distress.

### COUNT II — VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

49. Plaintiff realleges the above paragraphs as though fully set forth herein.

50. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

51. Plaintiff is a "person" as defined by R.C. 1345.01(B).

52. Defendants are "supplier[s]" as defined by R.C. 1345.01(C). *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016), *cert. denied sub nom. First Resolution Inv. Corp. v. Taylor-Jarvis*, 137 S. Ct. 398 (2016).

53. Debt collection is a "consumer transaction" as defined by R.C. 1345.01(A).

54. R.C. §1345.09(B) thus grants Plaintiff a private right of action against Defendants for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

55. Under the CSPA, the Court may award a multiplier for attorney fees for contingency fee cases, such as this one. *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 383 (6th Cir. 1993) (citing *Bittner v. Tri-Cty. Toyota, Inc.*, 569 N.E.2d 464 (Ohio 1991)).

56. Defendants committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), when Inquisition engaged in acts and practices in violation of the FDCPA as set forth above.

57. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq.* *See, e.g., Kelly v. Montgomery Lynch & Assocs.*,

*Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03").

58. Defendants, through Inquisition, committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

59. Defendants' actions, through Inquisition, therefore violated the CSPA, and Plaintiff is entitled to compensation.

### COUNT III – INVASION OF PRIVACY

60. Plaintiff realleges the paragraphs above as though fully set forth herein.

61. Ohio recognizes a cause of action for invasion of privacy based on "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee*, 69 Ohio St.2d 143, 145, 431 N.E.2d 992, 993 (Ohio 1982) (quoting *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (Ohio 1956)).

62. Inquisition invaded Plaintiff's privacy by persistently contacting his family, informing them of the alleged debt, and using them to convey Inquisition's threats to Plaintiff.

63. Inquisition's pattern of repeatedly calling Plaintiff and his family in their homes to make spurious threats of litigation was so outrageous that it would cause shame or humiliation to a person of ordinary sensibilities, and Plaintiff was injured by this conduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment as follows:

**a.** Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

**b.** Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

**c.** Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

**d.** Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

**e.** Awarding Plaintiff $200 per violation of the CSPA, plus noneconomic damages up to $5,000 per violation in an amount to be determined at trial, plus reasonable attorney fees;

**f.** Awarding Plaintiff's counsel an enhancement or multiplier of attorney fees pursuant to the CSPA;

**g.** Awarding Plaintiff damages for invasion of privacy;

**h.** Awarding Plaintiff the costs of this action; and

**i.** Awarding any other relief as this Honorable Court deems just and appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Dated:  June 28, 2018

By:  s/ Jonathan Hilton
Jonathan Hilton (0095742)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
jhilton@hiltonparker.com
*Attorney for Plaintiff*
